UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KEVIN B. MINER, SR., | ) |
| | ) |
|       Petitioner, | ) |
| | ) |
|    vs. | )    No. 4:02-CV-1859 (CEJ) |
| | ) |
| DAVE DORMIRE, | ) |
| | ) |
|       Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on petitioner's objections to the Report and Recommendation of United States Magistrate Judge Mary Ann L. Medler. In addition, petitioner seeks leave to file a first amended petition. Respondent has not filed a response to petitioner's objections nor an opposition to petitioner's motion to for leave to amend. Pursuant to 28 U.S.C. § 636(b)(1), the Court is required to make a *de novo* determination of the magistrate judge's proposed findings and recommendations as to which objection is made.

**I.**    **Procedural History**

On July 6, 1996, petitioner Kevin B. Miner, Sr., his brother Lucky Bill Miner, and their cousin Mark Miner engaged Michael Hunt and Willie Davis in an altercation. Hunt, Davis, and a third man, Timothy Decker, were stabbed in the confrontation. Hunt dies as a result of his injuries. Petitioner and Lucky Bill Miner were tried jointly in a bench trial after waiving their right to a jury. Mark Miner testified against them pursuant to a plea agreement with the State.

Petitioner was convicted of one count of first-degree murder, two counts of first-degree assault, three counts of armed criminal action, and one count of ethnic intimidation.[1]  Lucky Bill Miner was convicted of second-degree murder.  The court sentenced petitioner to life imprisonment without the possibility of parole for the first-degree murder conviction along with a concurrent 10-year term of imprisonment for the associated armed-criminal-action conviction; two 20-year terms of imprisonment for the first-degree assault convictions, each to be served consecutively to the murder sentence and to be served concurrently with two ten-year terms of imprisonment for the associated armed criminal action convictions; and a five-year term of imprisonment for the ethnic intimidation conviction, to be served consecutively to the other sentences.  The Missouri Court of Appeals summarily affirmed petitioner's convictions and sentences, State v. Miner, No. ED74469 (Mo. Ct. App. May 25, 1999), and the denial of post-conviction relief, Miner v. State, No. ED79462 (Mo. Ct. App. Apr. 16, 2002).

On December 17, 2002, petitioner filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting six claims for relief.  On January 28, 2003, attorneys Joel Schwartz and Douglas P. Roller filed an entry of appearance on behalf of petitioner and a motion for sixty days to file an amended petition. A review of the docket sheet in this matter indicates that the entry of appearance by attorneys Schwartz and Roller was never

---

[1] The trial court dismissed one count of ethnic intimidation as violating the protection against double jeopardy.

docketed. On January 29, 2003, their motion for sixty days to file an amended petition was granted. A copy of the order was mailed to petitioner, but not to his attorneys. On February 11, 2003, respondent responded to the Court's order to show cause why a writ of habeas corpus should not be granted. Although the certificate of service states that a copy was mailed to petitioner's counsel, counsel state that they never received the response. On March 7, 2005, Judge Medler filed a Report and Recommendation, which was electronically transmitted to counsel for respondent and was mailed to petitioner. The Clerk of Court did not provide a copy of the Report and Recommendation to petitioner's counsel.

Counsel for petitioner did not contact the Court between the time they filed their motion for additional time and the issuance of the Report and Recommendation. In support of their renewed motion for leave to file an amended petition, counsel state they spent the intervening time reviewing the file, drafting a petition for their client's approval, and awaiting the Supreme Court decision in <u>United States v. Booker</u>, 125 S. Ct. 738 (2005).

## II. Petitioner's Grounds for Relief

In his initial *pro se* petition, petitioner asserted the following grounds for relief:

1. The trial court erred in denying petitioner's motion for judgment of acquittal because the State failed to prove the requisite mental state for first-degree murder;

2. The trial court erred in denying petitioner's motion for judgment of acquittal on the charges of assault and the associated armed criminal action and ethnic intimidation charges because the State failed to prove petitioner

-3-

attempted to cause serious physical injury to Willie Davis.

3. Petitioner's convictions for assault, armed criminal action, and ethnic intimidation resulted in cumulative punishment in violation of the protection against double jeopardy;

4. The trial court imposed a sentence in excess of that permitted by statute;

5. Petitioner received ineffective assistance of counsel in that appellate counsel failed to argue that the trial court erred in rejecting petitioner's theory of self-defense and defense of others; and

6. Petitioner received ineffective assistance of counsel because trial counsel failed to call several witnesses.

In his proposed amended petition, petitioner asserts the following additional grounds for relief:

7. The trial court erred in concluding that petitioner was an initial aggressor and not entitled to the benefit of the law on self-defense or defense of others;

8. Petitioner's rights to due process, equal protection, and a fair trial were violated by prosecutorial misconduct, because the prosecutor (a) instructed witnesses not to speak with defense counsel, (b) improperly coached witnesses during their testimony or on breaks, (c) held group interview sessions with witnesses before trial, and (d) solicited a statement from a witness after misrepresenting himself as a member of the defense team;

9. Petitioner received ineffective assistance of counsel because counsel failed to object to the prosecutor's misconduct;

10. Petitioner received ineffective assistance of counsel because trial counsel failed to consult with petitioner;

11. Petitioner received ineffective assistance of counsel because trial counsel failed to move for change of venue; and

12. Petitioner received ineffective assistance of counsel because trial counsel failed to move for change of judge.

In the Report and Recommendation issued on March 7, 2005, Judge Medler reviewed petitioner's original claims on the merits and recommended denying relief on Grounds 1, 2, 3, 5, and 6. With respect to Ground 4, Judge Medler found that the trial court failed to make findings of fact as required by state law that petitioner qualified for enhanced sentencing as a prior and persistent offender.[2] Judge Medler accordingly recommended that the case be remanded to the state court for resentencing. Because the State has not objected to the recommendation on Ground 4, it will be adopted.

### III. Facts

The events giving rise to petitioner's conviction occurred late in the evening of July 6, 1996, in and around two taverns – Justin's Lounge and Dave's Den – located at the intersection of Nebraska and Keokuk Streets in St. Louis, Missouri. Petitioner and Lucky Bill Miner were involved in four confrontations with other individuals during the course of the several hours they were in the area.

John Prince, who is black, testified that he entered Justin's Lounge to use the pay phone, hoping to obtain crack cocaine. He sat at the front of the bar while waiting for a return phone call. Mr. Prince testified he heard racial slurs coming from a group of

---

[2]Petitioner claimed his twenty-year sentence for assault exceeded the statutory maximum of fifteen years. See § 558.011. Respondent contended that petitioner was charged as a persistent offender and thus was subject to a maximum term of thirty years. § 558.016.7(2). The record reflects that petitioner acknowledged two prior convictions.

-5-

individuals at the back of the bar. Several people, including petitioner and Lucky Bill Miner, chased him from the bar. Mr. Prince testified that he heard someone say, "they gonna cut this nigger."

Lucky Bill Miner testified that he became engaged in a verbal altercation with Mr. Prince in response to the latter's repeated offers to sell him crack cocaine. Lucky Bill Miner and defense witness Robert Poole testified that Mr. Prince left Justin's Lounge voluntarily. According to their testimony, Mr. Prince threatened to return with a "thumper" or a "popper," which they understood to mean a gun. Timothy Decker, who sustained a stab wound in the last incident of the evening, testified that he saw petitioner and Lucky Bill Miner chase Mr. Prince out of Justin's Lounge and that he heard them using racial epithets.

Sometime later, two black men entered Justin's Lounge and asked for change to use the pay phone. Mr. Decker testified that petitioner and Lucky Bill Miner approached the two men and chased them out the door, again using racial epithets. When petitioner chased one of the men across the intersection into Dave's Den, the bartender, Michael Carmen, and others intervened. Mr. Carmen testified that he saw a knife in petitioner's hand and told him to put it away. Mary Jane Gibson, an off-duty waitress, testified that she saw petitioner putting a knife into his back pocket.

Several witnesses testified that when petitioner left Dave's Den, he "hopped around" or did "some kind of Indian dance" or a "war dance" in the intersection. Mark Miner testified that he saw

petitioner in the street and tried to calm him down. Petitioner testified that he was angry at the time because "these fucking niggers keep wanting to sell crack." Petitioner and Lucky Bill Miner testified that they later returned to Dave's Den and again encountered the man they had chased in there. They testified that he threatened to come back later. No other witness observed petitioner and Lucky Bill Miner in Dave's Den a second time that evening.

The third incident of the evening occurred when a white man identified only as "Eddie" approached petitioner outside Justin's Lounge and knocked petitioner's arm off the wall. Petitioner and his Lucky Bill Miner followed Eddie into the bar. Petitioner struck Eddie, and there was testimony that Lucky Bill alternatively shoved Eddie onto the floor or held him against the wall. As a result of the confrontation with Eddie, Garold Haverfield, owner of Justin's Lounge, ordered everyone out of the bar.

Two black men, Willie Davis and Michael Hunt, approached Justin's Lounge after the owner had ejected petitioner and Lucky Bill Miner. The witnesses generally agreed that Davis and Hunt exchanged words with Lucky Bill Miner. Lucky Bill Miner testified that he stared at Hunt and Davis, trying to determine whether one of them was John Prince, whom Lucky Bill believed might come back to the bar with a gun. Petitioner testified that he was inside the bar during the initial verbal confrontation and that he went outside only after someone told him that Lucky Bill Miner was in danger. However, Mark Miner testified that he saw petitioner

-7-

arguing with one of the two men as he emerged from Justin's Lounge. Mark Miner testified that petitioner threw the first punch, striking one of the men in the head.

Bar owner Haverfield testified that he saw petitioner and Lucky Bill Miner rush toward the two men. Mark Miner became entangled with Davis, while Lucky Bill Miner and Hunt exchanged blows. Mark Miner and Davis separated, and petitioner chased Davis up the street, "sticking at him" with his knife. In the meantime, Hunt had managed to pull Lucky Bill Miner's shirt up and over his head. Lucky Bill Miner was unable to see and could not break himself away from Hunt's grip. Davis returned to the scene, picked up a traffic barricade, and started hitting Lucky Bill Miner who began shouting, "Get the fucking nigger off me." Lucky Bill Miner testified when he felt what he thought was a knife cut on his leg he shouted, "He's got a knife." Petitioner testified that he was hit in the head by what felt like a two-by-four, heard his Lucky Bill Miner's shout about a knife and lunged with his knife, first at Hunt and then at Davis. Timothy Decker testified that petitioner began "ripping" at Hunt with the knife. Decker testified further that petitioner also stabbed him as he fled the scene.

The trial court found that petitioner and Lucky Bill Miner were the initial aggressors in the confrontation with Willie Davis and Michael Hunt. The court also found that Lucky Bill Miner had asked for help to extricate himself from the grip of Hunt. Petitioner was found to have rejoined the struggle with Hunt at

Lucky Bill Miner's invitation.  The court also determined that
petitioner and Lucky Bill Miner were motivated at least in part by
race.  The trial court found that petitioner had the intent to kill
or cause serious physical injury to Hunt and Davis when he drew his
knife.  The trial court also found that petitioner deliberated at
least briefly before using his knife on Hunt and that petitioner
knowingly caused Hunt's death.

### IV. **Petitioner's Objections**

**Ground 1:**  Petitioner asserts that the state failed to submit
evidence that he possessed the necessary mental state to support
the conviction for first-degree murder.  Petitioner contends that
the evidence establishes that he acted in aid of his brother Lucky
Bill Miner, whom he saw being attacked with a dangerous and deadly
weapon.  The evidence further establishes, he argues, that he
intended only to get Hunt to release his brother, and that he acted
in haste, motivated by fear that his brother faced serious bodily
injury.

As Judge Medler noted,[3] "a claim that evidence is insufficient
to support a conviction as a matter of due process depends on
'whether, after viewing the evidence in the light most favorable to
the prosecution, <u>any</u> rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.'"

---

[3]Because the Missouri Court of Appeals affirmed the decision
of the trial court without comment, Judge Medler applied the
standard of review that existed before enactment of the
Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C.
section 2254(d).  <u>See</u> <u>Robinson v. Crist</u>, 278 F.3d 862, 865 (8th
Cir. 2002).

-9-

Wright v. West, 505 U.S. 277, 284 (1992) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original)). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." Jackson, 443 U.S. at 319.

In order to establish first-degree murder, the State was required to show that petitioner "knowingly cause[d] the death of another after deliberation upon the matter." § 565.020, Mo. Rev. Stat. "'Deliberation' means cool reflection for any length of time no matter how brief." § 565.002(3). Missouri's law on defense of another provides that a person is authorized to "use physical force upon another person when and to the extent he reasonably believes such force to be necessary to defend . . . a third person from what he reasonably believes to be the use or imminent use of unlawful force by such other person." § 563.031.1 Defense of a third person is justified only to the extent that the third person would be justified in using such force. § 563.031.1(2). The defense is not available to a person who is an "initial aggressor." § 563.031.1(1).

In this instance, the trial court found that petitioner deliberated, at least briefly, thereby establishing the requisite mental state. The trial court also found that Lucky Bill Miner was "an initial aggressor." Thus, he would not have been authorized to use force and, by extension, petitioner was not authorized to do so in defense of Lucky Bill Miner. After viewing the evidence in the

-10-

light most favorable to the prosecution, the Court agrees with Judge Medler that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Petitioner has not established he is entitled to relief on Ground 1.

**Grounds 2 and 3:** Petitioner combines his objections regarding Grounds 2 and 3 into a single argument that his convictions for first-degree assault upon and ethnic intimidation of Willie Davis constitute double jeopardy.

The Double Jeopardy Clause protects against multiple punishments for the same offense. Missouri v. Hunter, 459 U.S. 359, 366 (1983) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969)). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Id. Petitioner argues that his conviction for first-degree assault upon Willie Davis and for ethnic intimidation of Willie Davis violates the Missouri legislature's limitation on cumulative punishment.

Petitioner was charged with violating § 565.050 (first-degree assault) and § 574.093 (second-degree ethnic intimidation).[4] Section 565.050 defines first-degree assault as an attempt to kill

---

[4]Count VII of the indictment charged petitioner with the offense of ethnic intimidation in the second degree, in that he "with others, by reason of a motive related to race or color . . . attempted to cause physical injury to Willie Davis by stabbing him."

-11-

or cause serious physical injury to another.  Section 574.093 (now amended and found at § 557.035) imposed punishment upon a person who, "by reason of any motive relating to the race . . . of another individual . . . violates section 565.070." Section 565.070 proscribes third-degree assault.  A person commits third-degree assault if, as relevant here, "[t]he person <u>attempts to cause</u> . . . physical injury to another person."  § 565.070.1 (emphasis added).

Petitioner argues that his conviction for ethnic intimidation is the same as a conviction for attempted assault.  Thus, a conviction for both attempted assault and what petitioner calls "actual" assault results in cumulative punishment for the same conduct in violation of the Missouri legislature's intent (and, hence, in violation of the Double Jeopardy Clause), as expressed in § 556.041.  This statute, entitled "Limitation on conviction for multiple offenses," provides:

> When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense.  He may not, however, be convicted of more than one offense if

> \* \* \*

> (3) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct.

§ 556.041(3).

Petitioner's contention that ethnic intimidation is a specific instance of the general prohibition against attempting to inflict injury is without merit.  Conviction of ethnic intimidation

-12-

requires proof of a particular mental element – a motive relating to race – not required of first-degree assault. See State v. Dunn, 7 S.W.3d 427, 429-30 (Mo. Ct. App. 1999) (sexual abuse not a specific instance of forcible rape because sexual abuse requires unique mental element). Thus, petitioner cannot establish that his convictions and sentences were in excess of that intended by the State legislature and, therefore, he has not demonstrated a violation of the Due Process Clause.

**Ground 5:** Petitioner contends that he received ineffective assistance of counsel because appellate counsel failed to argue that the trial court violated his rights to due process and a fair trial when it determined that he was an initial aggressor and not entitled to the defense of "defense of another."

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687 (1984). In order to obtain relief under § 2254(d)(1), however, it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Bell v. Cone, 535 U.S. 685, 699 (2002). Rather, petitioner must show that the Missouri Court of Appeals applied Strickland to the facts of his case in an objectively unreasonable manner. Id.

The Missouri Court of Appeals rejected petitioner's claim upon appeal of the denial of post-conviction relief. The court found

that substantial evidence established the trial court's determination that Lucky Bill Miner and petitioner were initial aggressors. These findings are entitled to a presumption of correctness that may be overcome only by clear and convincing evidence. § 2254(e)(1). Based upon those findings, under Missouri law, petitioner was not entitled to the benefit of the law on self-defense or defense of others and counsel was not ineffective for failing to raise a meritless claim. Petitioner cannot establish that the state courts applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner.

**Ground 6:** Petitioner contends that trial counsel provided constitutionally inadequate assistance because counsel failed to call several witnesses. The post-conviction motion court denied this claim and the Missouri Court of Appeals affirmed. The state courts found that the potential witnesses would have provided cumulative testimony and character evidence. The courts determined that counsel's failure to call witnesses for these purposes did not violate the <u>Strickland</u> standard for effective assistance. Petitioner cannot show that the state courts applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner. <u>Bell v. Cone</u>, 535 U.S. 685, 699 (2002).

In summary, the Court concludes that petitioner's objections to the Report and Recommendation of United States Magistrate Judge Medler are without merit. The Report and Recommendation will be adopted.

### V. **Petitioner's Amended Petition**

Petitioner moves to amend his petition and respondent does not object. The Court therefore will grant petitioner leave to amend his petition and will review the additional claims for relief.

**Ground 7:**[5] Petitioner contends that the trial court erred in concluding that he was an initial aggressor and not entitled to the benefit of the law on self-defense or defense of others. Petitioner cannot overcome the presumption of correctness afforded to the state courts' determination of the underlying facts. § 2254(e)(1). Furthermore, the state courts' interpretation and application of state law with regard to defense of others does not give rise to a cognizable constitutional claim. Poe v. Caspari, 39 F.3d 204, 207 (8th Cir. 1994) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.") (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)).

**Grounds 8 and 9:**[6] In Ground 8, petitioner contends that the prosecutor improperly (a) instructed witnesses not to speak with defense counsel, (b) improperly coached witnesses during their testimony or on breaks, (c) held group interview sessions with witnesses before trial, and (d) solicited a statement from a witness after falsely stating he was a member of the defense team.

---

[5] Ground 5 in the first amended petition.

[6] Grounds 6 and 7 in the first amended petition.

In Ground 9, petitioner argues that trial counsel did not properly object to the prosecutor's conduct.

A habeas petitioner must pursue all available avenues of relief in the state courts before the federal courts can consider a claim. See § 2254(b); Duvall v. Purkett, 15 F.3d 745, 746 (8th Cir. 1994). "A federal court can consider the merits of a habeas corpus petition only when the prisoner has 'fairly presented' to the state courts the 'substance' of his [or her] federal habeas corpus claim." Buckley v. Lockhart, 892 F.2d 715, 718 (8th Cir. 1989) (quoting Martin v. Solem, 801 F.2d 324, 330 (8th Cir. 1986)). To avoid procedural default, Missouri procedure requires that a claim be presented at each step of the judicial process. Jolly v. Gammon, 28 F.3d 51, 52 (8th Cir. 1994).

Petitioner's motion for post-conviction relief included a claim that his due process rights were violated by the prosecutor's conduct as detailed above. The motion court did not specifically address this claim in its findings of fact and conclusions of law before denying the post-conviction motion in its entirety. Upon appeal of the denial of post-conviction relief, petitioner argued only that the motion court violated state procedural rules by failing to issue findings of fact on the prosecutorial misconduct claim. Petitioner did not restate the underlying due process argument and, thus, the claim is procedurally defaulted. See Jones v. Jerrison, 20 F.3d 849, 854 (8th Cir. 1994) (to "fairly present" claim, petitioner must present same facts and theories to state courts he later presents to federal court).

-16-

Even if properly preserved, however, the claim does not entitle petitioner to the relief he seeks. "Prosecutorial misconduct does not merit federal habeas relief unless the misconduct infected the trial with enough unfairness to render [petitioner's] conviction a denial of due process." Louisell v. Director of Iowa Dept. of Corrections, 178 F.3d 1019, 1023 (8th Cir. 1999) (quoting Roberts v. Bowersox, 137 F.3d 1062, 1066 (8th Cir. 1998)). The Court has reviewed the transcript and agrees that the prosecutor's conduct was in many instances improper. Defense counsel vigorously contested the prosecutor's conduct, however, and petitioner has not established that the judge's verdict was influenced by the questionable conduct or that the misconduct rendered his trial fundamentally unfair. Petitioner's challenge to his trial counsel's performance similarly fails.

**Grounds 10, 11, and 12:**[7] Petitioner contends he received ineffective assistance of counsel because counsel failed to (1) consult with him regarding all aspects of the trial, (2) move for change of venue, and (3) failed to move for change of judge. These ineffective-assistance claims were not raised on appeal of the denial of post-conviction relief and are procedurally defaulted.

Accordingly,

**IT IS HEREBY ORDERED** that petitioner's motion for leave to file first amended petition [#17] is **granted.**

---

[7]Grounds 9, 10 and 11 in the first amended petition.

**IT IS FURTHER ORDERED** that the Report and Recommendation of United States Magistrate Judge Mary Ann L. Medler [#14] is sustained, adopted, and incorporated herein.

**IT IS FURTHER ORDERED** that the petition for a writ of habeas corpus [#4] is **denied** with respect to Grounds 1 through 3 and 5-6.

**IT IS FURTHER ORDERED** that the petition for a writ of habeas corpus is **conditionally granted** with respect to Ground 4, with the writ to issue in the event that the State of Missouri fails within ninety (90) days of the date of this order to determine pursuant to § 558.021, Mo. Rev. Stat., and in a manner consistent with this Memorandum and Order, whether petitioner is a persistent offender and to resentence petitioner accordingly.

**IT IS FURTHER ORDERED** that the amended petition for writ of habeas corpus is **denied** in its entirety.

CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 31st day of May, 2005.